<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JORGE VARGAS RAMOS,

    Petitioner,

    v.

ERIC ROKOSKY, *et al.*,

    Respondents.

No. 25cv15892 (EP)

**OPINION**

**PADIN, District Judge.**

This matter comes before the Court on Petitioner Jorge Vargas Ramos' Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, filed on September 23, 2025. D.E. 1 ("Petition" or "Pet"). Respondents filed an answer to the Petition. D.E. 3 ("Answer"). Petitioner timely filed a reply brief. D.E. 5 ("Reply"). The Court has reviewed all pleadings and supporting documents, and determined that oral argument is unnecessary. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **GRANT** the Petition.

## I.    BACKGROUND

Petitioner is a citizen and national of Mexico who entered the United States in 1995. Pet. ¶ 20; D.E. 1-3 at 1-2, Ex. A. ("Notice to Appear" or "NTA")). Years later, Petitioner was arrested in Camden Municipal Court on March 27, 2012, where he pled not guilty and all charges were dismissed. Pet. ¶ 21. The same day, the U.S. Department of Homeland Security ("DHS") issued a warrant for alien arrest against Petitioner. *Id.*; D.E. 1-4, Ex. B ("Warrant"). The Warrant stated that Petitioner was "liable to being taken into custody as authorized by section 236 of the

Immigration and Nationality Act[1] ["INA"].  *Id.*  Petitioner was detained in DHS custody on April 24, 2012.  Pet. ¶ 21; D.E. 1-5, Ex. C ("Not. of Custody Determination").  He was released on a $15,000 bond on May 1, 2012.  Pet. ¶ 22; D.E. 3-1, Ex. A to Answer ("Form I-830 May 1, 2012").  Petitioner's removal proceedings were held in an immigration court in Newark, New Jersey, where he applied for cancellation of removal.  Pet. ¶ 22.[2]

In August 2023, Petitioner's son, Christopher Vargas Rivas, filed an I-130 Petition for Alien Relative with U.S. Customs and Immigration Services ("USCIS") on Petitioner's behalf.  *Id.* ¶ 23.  Petitioner's son has served in the National Guard since 2020, which renders Petitioner eligible for Military Parole in Place.  *Id.*; *see also* Maximiliano Gluzman, *Parole in Place As A Solution for the Immigration Status of Immediate Relatives of U.S. Citizens*, 96 St. John's L. Rev. 921, 942 and n. 162 (2022) ("In 2007, DHS started granting parole to relatives of members of the armed forces who were in the country without having been inspected or admitted.").

Petitioner was arrested in Woodlynne, New Jersey on May 13, 2024, but all charges were dismissed by motion of the prosecution on September 3, 2025.  Pet. ¶ 24.  Petitioner had appeared for his immigration hearings and complied with all reporting requirements when he was re-detained by Immigration and Customs Enforcement ("ICE") on August 24, 2025, and placed in detention at the Elizabeth Detention Center in Elizabeth, New Jersey.  *Id.*; D.E. 3-2, Answer, Ex. B ("Form I-213 Aug. 24, 2025").  Petitioner continues to pursue cancellation of removal.[3]  Pet. ¶ 25.  He was scheduled for a removal hearing on October 21, 2025.  Answer at 21 n.8; D.E. 3-3, Ex. C ("Hearing Notice Oct. 9, 2025").

---

[1] Section 236 of the INA is codified at 8 U.S.C. § 1226.

[2] The parties did not submit records of the removal proceedings.

[3] *See* 8 U.S.C. § 1229b, Cancellation of Removal; Adjustment of Status.

Petitioner asserts jurisdiction under 28 U.S.C. § 2241, Art. I § 9, cl. 2 of the United States Constitution ("the Suspension Clause") and 28 U.S.C. §§ 1331[4] and 1361.[5]  Pet. ¶ 12.   Petitioner seeks relief pursuant to 28 U.S.C. § 2241 *et seq.*, the All Writs Act (28 U.S.C. § 1651), and the Declaratory Judgment Act (28 U.S.C. § 2201 *et seq.*)  *Id.* ¶ 12.

The Petition contains five claims for relief.  *Id.* ¶¶ 50-68.  In his first claim for relief ("Count I"), Petitioner asserts the mandatory detention provision under 8 U.S.C. § 1225 does not apply to him and that he is unlawfully detained under 8 U.S.C. § 1226(a) without having been afforded a bond hearing.  *Id.* ¶¶ 50-51.  In other words, Petitioner argues "Respondents' unlawful application of § 1225(b)(2) to Petitioner violates the INA."  *Id.* ¶ 50.

For his second claim for relief ("Count II"), Petitioner asserts that he has unlawfully been denied release on bond pursuant to 8 C.F.R. §§ 236.1, 1236.1 and 1003.19.[6] *Id.* ¶¶ 52-54.  Petitioner claims entitlement to a bond hearing as an "applicant for admission" who is present in the United States without having been admitted or paroled, in other words, he entered without inspection and falls under 8 U.S.C. § 1226(a) and its implementing regulations.  *Id.* ¶ 53.

Petitioner's third claim for relief ("Count III") is related to his first two claims.  He asserts that his mandatory detention pursuant to § 1225(b)(2) is an arbitrary and capricious agency action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2).  *Id.* ¶¶ 55-59.

---

[4] 28 U.S.C. § 1331 provides "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

[5] 28 U.S.C. § 1361 governs the burden of proof upon a noncitizen seeking entry into the United States and in removal proceedings.

[6] Section 236.1 and 1236.1 of the federal regulations governing "Aliens and Nationality" describe the procedures for apprehension, custody determinations, detention and release of aliens "not lawfully admitted."  8 C.F.R. §1003.19 governs an Immigrations Judge's review of custody determinations by "USCIS."

3

Petitioner's fourth and fifth claims for relief ("Count IV" and "Count V") are related. In Count IV, Petitioner asserts he has been deprived of his Fifth Amendment substantive due process liberty interest in a bond hearing to determine whether his immigration detention is "reasonably related to the goals of ensuring the appearance of noncitizens at future proceedings and preventing danger to the community[.]" *Id.* ¶¶ 60-62 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). In Count V, Petitioner asserts that his procedural due process rights under the Fifth Amendment have been violated because he has been detained without due process and is eligible for a bond hearing under § 1226(a). *Id.* ¶¶ 63-68.

Petitioner seeks: (1) declaratory relief that his continued detention violates the INA, the APA, and/or the Due Process Clause of the Fifth Amendment to the U.S. Constitution; (2) habeas corpus relief ordering his "release within 10 days unless Respondents schedule a hearing before an immigration judge at which the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present"; (3) alternatively, for the Court to order his immediate release; (4) the award of costs and attorney's fees; and (5) any other appropriate relief. Pet., Prayer for Relief, ¶¶ 1-6.

Respondents oppose the Petition. Answer. They argue Petitioner is properly detained under 8 U.S.C. § 1225(b)(2) under the plain text of the statute and the Bureau of Immigration Appeals' ("BIA") Decision in *Matter of Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) ("*Hurtado*"). *Id.* at 7-12. Respondents contend Petitioner is mistaken that he is detained under 8 U.S.C. §1226(a). *Id.* at 12-18. Finally, Respondents argue that Petitioner's detention does not violate the Due Process Clause of the Fifth Amendment because the Due Process Clause requires only that

4

his detention must comply with the relevant statute, in this case, mandatory detention during removal proceedings under 8 U.S.C. § 1225(b)(2).

In Reply, Petitioner describes his transfers between detention facilities. On or about September 26, 2025, he was transferred, via Louisiana, to a detention center in El Paso, Texas, where he spent three nights sleeping on a concrete floor and was provided only one sandwich per day. Reply at 1-2; D.E.s 5-1, Ex. D ("DHS ICE FORM I-830, Elizabeth, N.J.") and 5-2, Ex. E ("DHS ICE Form I-830, El Paso, Texas"). Petitioner was next transferred to Denver Contract Detention Center in Colorado, where he currently remains. Reply at 2; D.E. 5-3, Ex. F ("DHS ICE Form I-830, Aurora, Colorado").

At his October 21, 2025 removal hearing, Petitioner's counsel sought a continuance until November 10, 2025, to prepare evidence and expedite Petitioner's son's pending I-130 petition. *Id.*; Ex. G ("Email requesting expedited processing by ICE"). Petitioner reiterates two main arguments in his reply brief: (1) § 1225 applies only to inspection of recent arrivals, while § 1226 governs the detention of long-term residents, Reply Br. at 4-16; and (2) due process entitles Petitioner to a bond hearing, *id.* at 16-18.

## II.    DISCUSSION

### A.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2241(c)(3) to grant a writ of habeas corpus to a person in custody in violation of the Constitution, laws, or treaties of the United States. *Demore v. Kim*, 538 U.S. 510, 517 (2003). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing the Suspension Clause). A habeas petitioner has "the burden of sustaining his allegations by a preponderance of evidence." *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

District Courts also have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331, and the ability to grant equitable relief in the absence of an exclusive statutory review scheme. *Semper v. Gomez*, 747 F.3d 229, 242 (3d Cir. 2014).

### B.    Statutory Framework

The key issue is whether Petitioner is detained under 8 U.S.C. § 1225(b)(2) or § 1226(a). In *Jennings v. Rodriguez,* the Supreme Court laid out how these two provisions govern the admission and removal decisions encountered by immigration officials:

> Every day, immigration officials must determine whether to admit or remove the many aliens who have arrived at an official "port of entry" (*e.g.*, an international airport or border crossing) or who have been apprehended trying to enter the country at an unauthorized location.  Immigration officials must also determine on a daily basis whether there are grounds for removing any of the aliens who are already present inside the country.  The vast majority of these determinations are quickly made, but in some cases deciding whether an alien should be admitted or removed is not as easy.  As a result, Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings.  Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.

583 U.S. 281, 285-86 (2018).

The Government implements immigration policy by deciding: "(1) who may enter the country and (2) who may stay here after entering." *Id.* at 286.  The Court explained that under § 1225, the "decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* at 287.  Under this provision, an "applicant for admission" is a noncitizen[7] who "arrives in the United States, or 'is present' in this country but has not been admitted." § 1225(a)(1).  Pursuant to §

---

[7] The Court will use the term "noncitizen" interchangeably with the statutory term "alien."

1225(a)(3), "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."

There are two classes of applicants for admission under § 1225(b):  (1) noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General in his discretion;" and (2) a catchall provision "that applies to all applicants for admission not covered by § 1225(b)(1) . . . (with specific exceptions[.])".  *Jennings*, 583 U.S. at 287 (citation modified).

Most noncitizens under § 1225(b)(1) are ordered removed "without further hearing or review" under § 1225(b)(1)(A)(i).  *Id.*  Those who fall under § 1225(b)(1) are detained when they state an intention to apply for asylum and are determined in an interview to have a credible fear of persecution.  *Id.*  Noncitizens covered under the broader scope of § 1225(b)(2) "shall be detained for a removal proceeding if an immigration officer determines that they are not clearly and beyond a doubt entitled to be admitted into the country."  *Id.* at 288 (citation modified).

Under either subsection of § 1225(b), "applicants for admission may be temporarily released on parole for urgent humanitarian reasons or significant public benefit."  *Id.* (citation modified).  This type of "parole" is not an "admission" pursuant to 8 U.S.C. § 1182(d)(5)(A).  *Id.* An inadmissible alien placed in mandatory detention at the border pursuant to § 1225(b)(1)(A)(i), if released from detention, does not have a right to stay in the country because "[w]ithout a change in status, he would remain subject to arrest, detention, and removal [under] §§ 1226(a), 1229a(e)(2)."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020).  Thus, a noncitizen's status as an inadmissible alien is not necessarily indicative of whether they may be detained under § 1225(b) or § 1226.  Indeed, the *Jennings* Court explained that,

> [e]ven once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls "within one or more . . . classes of deportable aliens." § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. *See* §§ 1227(a)(1), (2).

583 U.S. at 288. Noncitizens falling within this definition may be arrested and detained pending removal. *Id.* Thus, the INA establishes procedures "for removing aliens *living* unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (emphasis added).

When DHS discovers a noncitizen living in the United States without authorization, the first step under the INA is to institute removal proceedings by sending the noncitizen a notice to appear. *Id.* (citing 8 U.S.C. § 1229(a)). After issuing a notice to appear, the INA provides that "DHS may arrest and detain the alien pending a decision on whether the alien is to be removed from the United States." *Id.* (citing § 1226(a)). § 1226(a) is the default rule for arrest and detention of noncitizens present in the country "who were inadmissible at the time of entry." *Jennings*, 582 U.S. at 288. Noncitizens who fall under the default rule in § 1226(a) may be released by the Attorney General on bond or conditional parole. *Id.*[8]

In sum, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.

### C.    The BIA's Decision in *Hurtado*

The BIA recently addressed a novel issue:

> [whether] all applicants for admission, even those . . . who have entered without admission or inspection and have been residing in the United States for years

---

[8]  8 U.S.C. § 1226(c) carves out an exception to release on bond or conditional parole, applicable to "any alien who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 582 U.S. at 289 (citation modified).

> without lawful status, [are] subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category?

*Hurtado*, 29 I&N Dec. at 220.  Hurtado entered the United States without inspection and conceded that he was an "applicant for admission" under § 1225(a)(1) but argued he was not "seeking admission" within the meaning of the statute because he had resided in the U.S. for almost three years.  *Id.* at 221.  The BIA was not persuaded because this distinction did not explain Hurtado's legal status.  *Id.*  The BIA found the plain language of the INA would not support a reading that:

> after some undefined period of time residing in the interior of the United States without lawful status . . . an applicant for admission is no longer "seeking admission," and has somehow converted to a status that render[s] him or her eligible for a bond hearing under . . . 8 U.S.C. § 1226(a).

*Id.*  The BIA also disagreed with Hurtado's contention that "DHS' longstanding practice of treating aliens who are present in the United States without inspection as detained under . . . 8 U.S.C.[] § 1226(a)" supported the conclusion that "Congress did not intend . . . § 1225(b)(2)(A), to apply to aliens who are arrested after having lived in the United States for more than 2 years[.]"  *Id.* at 225-26 (citation modified).  According to the BIA, the longstanding practice of the Government under § 1226(a) could not "somehow change or even eviscerate, explicit statutory text that is contrary to that practice."  *Id.* at 226 (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385-86 (2024)).  In cases where the DHS issued an arrest warrant in conjunction with a Notice to Appear and a Notice of Custody Determination pursuant to § 1226(a), the BIA determined that "the issuance of an arrest warrant does not endow an Immigration Judge with authority to set bond for an alien who falls under . . . § 1225(b)(2)(A)."  *Id.* at 227.

**D.      The Parties' Arguments**

*1.      The Petition*

As noted above, Petitioner entered the United States without inspection in October 1995 and has lived in the United States for over 25 years.  Pet. ¶ 1.  He now asserts he is unlawfully detained under § 1226(a) without a bond hearing.  *Id.* ¶¶ 2-3.

Petitioner contends that his detention falls under § 1226(a) and authorizes release after a bond hearing before an immigration judge.  *Id.* ¶ 3.  Alternatively, if his detention falls under § 1225(b)(2), Petitioner contends his detention without a bond hearing violates his right to due process under the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *Id.* ¶ 4.  In *Matthews*, the Supreme Court explained that:

> the specific dictates of due process generally requires consideration of three distinct factors: *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [*third*], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335 (citation modified).

*2.      The Answer*

Respondents assert the plain meaning of the text of § 1225(b)(2) broadly "allows for mandatory detention [of] any alien 'present in the United States who has not been admitted.'"  Answer at 7 (citing § 1225(a), (b)(2)).  There are three key components in the plain text of § 1225(b)(2):  (1) the noncitizen is an "applicant for admission"; (2) who is "seeking admission"; and (3) an examining immigration officer has determined the noncitizen "is not clearly and beyond a doubt entitled to be admitted."  *Id.*  "Applicant for admission" is defined in § 1225(a)(1) as an

10

"alien present in the United States who has not been admitted" or "who arrives in the United States." *Id.* at 8. Petitioner is present in the United States and has never been admitted. *Id.*

According to Respondents, Petitioner is "seeking admission" because the definition of "applicant for admission" under § 1225(a) includes those arriving in the United States and those present. *Id.* Petitioner, they claim, therefore meets the final element of § 1225(b)(2) because an examining officer determined that he "is not clearly and beyond a doubt entitled to be admitted" when DHS issued a Notice to Appear, charging Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)). Respondents find support for their statutory interpretation in *Jennings*[9] and *Hurtado*. *Id.* at 11-12.

Respondents reject Petitioner's argument that § 1226(a) is the *sole* authority for his detention and maintain that the "specific" detention authority in § 1225 governs over the more general or "default" authority under § 1226. *Id.* at 12 (emphasis added). Respondents contend that § 1225(b)(2)(A) is not limited to aliens arriving at a port of entry or who have recently entered, because the definition of applicant for admission in § 1225(a)(1) encompasses both arriving aliens and aliens present without being admitted. *Id.* at 13. Respondents assert that Petitioner falls within the catchall provision of § 1225(b)(2), but they acknowledge that prior to when the BIA decided *Hurtado* in July 2025, that immigration officials agreed noncitizens who were present in the United States without having been admitted or paroled under § 1226(a) were eligible for release on bond or parole. *Id.* at 14, n.4.

Respondents also argue that Petitioner's detention without a bond hearing under § 1225(b)(2) does not violate due process. *Id.* at 18-21. While Respondents agree that an applicant

---

[9] The *Jennings* Court stated § 1225(b)(2) is a "catchall provision" which applies to "all applicants for admission not covered by § 1225(b)(1)." Answer at 11 (quoting *Jennings*, 583 U.S. at 287.)

for admission who remains in the United States unlawfully has due process rights, those rights are limited to those Congress set forth by statute, *id.* at 18-19 (quoting *Thuraissigiam*, 591 U.S. at 140), and that § 1225(b)(2) requires mandatory detention. *Id.* at 19. Furthermore, Respondents assert Petitioner's detention without bond—approximately two months as of the date of this opinion—is not unconstitutionally prolonged. *Id.* at 19-20. Therefore, it does not violate the Due Process Clause. *Id.* at 20.

### 3.    Petitioner's Reply

In Reply, Petitioner cites to many district courts across the country which have rejected *Hurtado*. Reply at 5-7. Like in those cases, Petitioner advances the argument that §§ 1226(a) and 1225(b)(2)(A) govern different categories of noncitizens—§ 1226 is a discretionary detention scheme for those "already in the country" and detained "pending the outcome of removal proceedings[,]" while § 1225 is a processing and inspection scheme applicable to those "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Id.* at 8 (quoting *Jennings*, 583 U.S. at 287-89). In support of this interpretation, Petitioner focuses on the title of § 1225, which refers to the "inspection" of inadmissible "arriving [aliens]" as well as the text of the statute, which states that "examining immigration officers" inspect people "arriving in the United States[.]" *Id.* at 9. Petitioner concludes the text of § 1225 is clearly intended to apply to recent arrivals at or near the U.S. border, which is not him. *Id.* Section 1226, on the other hand, applies broadly to noncitizens already in the country and arrested on a warrant pending a removal determination. *Id.* Thus, Petitioner asserts that § 1226 plainly applies to him as he was arrested on a warrant years after he entered the United States. *Id.* at 9-10.

Furthermore, Petitioner asserts the term "applicant for admission" under § 1225 must be read in the context of § 1225 providing a border inspection scheme applicable to those apprehended in the country after having recently crossed the border. *Id.* at 10-11. Similarly, Petitioner avers that the term "seeking admission" within the border inspection scheme "was intended to cover the detention of noncitizens seeking admission at or near the border" and has a temporal limit that the noncitizen was seeking admission at the time of inspection. *Id.* at 12-13. Finally, Petitioner contends that Congressional intent[10] and longstanding agency practice indicate that he is detained under § 1226(a).

Finally, after his detention transfer out New Jersey, Petitioner requests additional relief. *Id.* at 18. He alleges it is a common practice for ICE to release detainees without their identification, preventing them from boarding a plane. *Id.* Therefore, Petitioner seeks an order that DHS return him to New Jersey, and further, that his $15,000 bond paid in 2012 be used as his bond in this matter. *Id.* Based on his long compliance with immigration court obligations, Petitioner asks the Court to order that there are no additional restrictions on his liberty, such as electronic monitoring. *Id.*

### E.     Analysis

"[C]ourts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters.*, 603 U.S. at 394. Courts, however, may seek guidance from

---

[10] Petitioner points to the Laken Riley Act of 2025, which added a subsection to § 1226 mandating detention for noncitizens present without being admitted or paroled, among other categories, if they have been arrested for, charged with or convicted of certain crimes. *Id.* at 14 (citing 8 U.S.C. § 1226(c)(1)(E)). Petitioner contends that if Congress intended for § 1225 to govern detention of noncitizens like himself, the Laken Riley Act would have been placed under § 1225. *Id.* Respondents contend the Liken Riley Act reflects a Congressional intent "to make doubly sure" unlawful aliens are detained, and does not require that the alien who falls "under § 1225(b)(2) be treated as an alien detained under § 1226(a)." Answer at 15.

agency interpretations, and such interpretations "may be especially useful" when they are "issued contemporaneously with the statue at issue, and which have remained consistent over time." *Id.* Where a statute delegates discretionary authority to an agency, the reviewing court must independently interpret the statute and "effectuate the will of Congress subject to constitutional limits." *Id.* at 395. "In an agency case as in any other, though, even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—the reading the court would have reached if no agency were involved." *Id.* at 399 (citation modified). Courts should apply all relevant interpretive tools and conclude the best statutory interpretation. *Id.* at 400. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *City & Cnty. of San Francisco, California v. Env't Prot. Agency*, 604 U.S. 334, 350 (2025) (citation modified).

After considering the parties' arguments and many recent decisions regarding nearly identical factual scenarios, the Court rejects the BIA's reasoning in *Hurtado* and concludes that Respondents' interpretation of § 1225(b)(2)(A) is incompatible with the overall statutory scheme. As the Supreme Court explained in *Jennings*, § 1225(b)(2)(A) governs: (1) those who may *enter* the country under § 1225(b); and (2) those who may *remain* in the country under § 1226(a), (c). 583 U.S. at 286 (emphasis added). In their Answer, Respondents ignore the longstanding distinction in U.S. immigration law between those noncitizens who are *entering* the country and those who remain *after entering*, focusing instead on the definition of "applicant for admission" and misreading the statutory phrase "seeking admission" to include the past-tense—aliens who entered the country without inspection under § 1225 and were arrested years later and seek to remain. Respondents' interpretation violates the rule against surplusage as it would render the phrase "seeking admission" within the statute superfluous. *Zumba v. Bondi*, No. 25-14626, 2025

14

WL 2753496, at *8 (D.N.J. Sept. 26, 2025) (citations omitted).  Further strengthening the Court's

rejection of *Hurtado* is that "the BIA's 'current position is inconsistent with its earlier

pronouncements' which took the opposite position,[11] and under *Loper*, 'the Court has no obligation

to defer to the BIA's view, particularly when that view has not 'remained consistent over time.'"

*Id.* (quoting *Salcedo Aceros v. Kaiser*, No. 25-6924, 2025 WL 2637503, at *9 (N.D. Cal. Sept. 12,

2025)).

Accordingly, the Court will join the several other courts across the country which have

persuasively determined that the best reading of the statute is that § 1225(b)(2) governs "applicants

for admission at [or near] the border and mandates custody without bond while admissibility is

determined" while § 1226(a) "applies to noncitizens already present and allows for detention

pending removal, with bond hearings before an immigration judge." *Eliseo A.A. v. Olson.*, No. 25-

3381, 2025 WL 2886729, at *2-4 (D. Minn. Oct. 8, 2025); *see also Lopez Benitez v. Francis*, No.

25-5937, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) ("By reading [the] phrase [seeking

admission] out of the statute, Respondents' interpretation of § 1225 clearly 'violates the rule

against surplusage.'"); *Sampiao v. Hyde*, No. 25-11981, 2025 WL 2607924, at *7 (D. Mass. Sept.

9, 2025) ("The plain text of Section 1226(a) . . . indicates Congress's intent to establish a

discretionary, rather than mandatory, detention framework for noncitizens arrested on a warrant");

*Leal-Hernandez v. Noem*, No. 25-2428, 2025 WL 2430025, at *10 (D. Md. Aug. 24, 2025) ("The

Government appears willfully blind to the operation of 8 U.S.C. § 1226(a)" by ignoring the

statutory text that an alien may be arrested and detained on a warrant issued by the Attorney

---

[11]    Other Courts have observed that in those unpublished decisions, the BIA stated that it was
"unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the
custody conditions of a respondent in removal proceedings under the circumstances here."
*Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) (citations omitted).

General pending a decision on removal); *Kostak v. Trump*, No. 25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025) ("The *Jennings* analysis explains the necessity for both statutes by differentiating between the detention of arriving aliens who are seeking entry into the United States under Section 1225 and the detention of those who are already present in the United States under Section 1226"); *Mosqueda v. Noem*, No. 25-2304, 2025 WL 2591530, at *5 ("The Court finds that the conflict is avoided by interpreting sections 1225(b)(2) and 1226(a) to apply to different sets of noncitizens—those 'seeking admission' compared to those already in the country who are arrested and detained."); *Zumba*, 2025 WL 2753496, at *10 (holding the mandatory detention of a petitioner who lived in the United States for 20 years "is not authorized by § 1225, serves no legitimate purpose, and amounts to punitive detention, warranting habeas relief"); *Pizarro Reyes v. Raycraft*, No. 25-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall . . . and 'applies to aliens already present in the United States' . . . inclusion of both provisions . . . is likely . . . a way for Congress to capture noncitizens who fall outside of the specified categories") (citation modified); *Barrera v. Tindall*, No. 25-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (holding the text of § 1225 is focused "on inspections for noncitizens when they arrive" and "suggest[s] [it] is limited to noncitizens arriving at a border or port and are presently 'seeking admission' into the United States.").

The record supports the conclusion that Petitioner was unlawfully taken into mandatory detention under § 1225(b)(2)(A) in August 2025 and has also wrongfully been denied a bond hearing. Namely, because Petitioner entered the United States without inspection in October of 1995, and has lived in the United States for more than 25 years, Pet. ¶ 1, Petitioner is not lawfully detained as an applicant "seeking admission" under the inspection scheme described in §

16

1225(b)(2)(A). *See Lopez-Campos*, 2025 WL 2496379, at *7 ("[Petitioner] was not arriving to the country or found at the border or a port of entry. Quite the contrary, he was apprehended during a traffic stop, already in the country, after living and being present in the United States for a substantial period of time, making Section 1226 applicable.") (citation modified).

In 2012, Petitioner was arrested, detained, and released on bond, expressly pursuant to § 1226(a). *See* Warrant and Not. of Custody Redetermination. Petitioner then remained free in the United States until August 24, 2025, when he was arrested by ICE at a traffic stop, served with a NTA, and placed into removal proceedings under the charge of "Alien present without admission or parole." Form I-213 Aug. 24, 2025, at 2. Because Petitioner was arrested via a warrant after living in the United States many years, he is not subject to the provisions of § 1225(b)(2)(A). He clearly falls under the provisions of § 1226(a), and therefore, not only is his detention under § 1225(a) illegal—which requires his release from custody and his return to New Jersey—but he also should have been afforded the bond hearing outlined in § 1226(a). Accordingly, the Court will **GRANT** the Petition.

## III.    CONCLUSION

For the reasons explained above, the Court will **GRANT** the Petition. Petitioner is unlawfully detained under § 1225(b)(2) and the Court will accordingly order his release. If Petitioner is arrested and re-detained under Section 1226(a), the statute and the Fifth Amendment's Due Process Clause require that he be provided a bond hearing pursuant to 8 C.F.R. § 236.1(d) and immediately released from detention if he is determined not to pose a flight risk or danger to the community. *Thuraissigiam*, 591 U.S. at 140.

Dated: November 3, 2025

Evelyn Padin, U.S.D.J.

17